STATE OF NORTH CAROLINA v. ELI FLORIST EASTERLING

No. 25

(Filed 15 July 1980)

1. **Constitutional Law § 31— indigent defendant—appointment of investigator**

    An indigent defendant's constitutional and statutory right to a State ap-
    pointed investigator arises only upon a showing that there is a reasonable
    likelihood that such an investigator would discover evidence which would
    materially assist defendant in the preparation of his defense.

2. **Criminal Law § 91.1— motion for continuance—discretion of court**

    A motion for continuance which does not implicate constitutional rights is
    ordinarily addressed to the discretion of the trial court, and its denial will not
    be held error on appeal in the absence of an abuse of discretion.

3. **Constitutional Law § 31— indigent defendant—denial of funds for private in-
    vestigator**

    In a prosecution for first degree murder, armed robbery and first degree
    burglary, the trial court did not abuse its discretion in the denial of an in-
    digent defendant's motion for funds to hire a private investigator where, at
    the hearing on the motion, defendant's counsel did little more than assert that
    "hours of inquiry" were still required into "the possible testimony of
    witnesses" who had not yet been contacted some three months after de-
    fendant's arrest, since such a statement does not rise to the level of showing a
    reasonable likelihood that the efforts of an investigator would discover addi-
    tional evidence helpful to defendant.

4. **Constitutional Law § 31— indigent defendant—denial of funds for private
    psychiatrist**

    The trial court did not err in the denial of defendant's motion for funds to
    hire a private psychiatrist where defendant was examined by a psychiatrist at
    Dorothea Dix Hospital upon motion of the State; the psychiatrist's report in-
    dicated that defendant was capable of proceeding to trial and that he was
    legally sane at the time of the trial; the trial court's hearing on the motion was
    fully adequate to determine defendant's capacity to proceed pursuant to G.S.
    15A-1002(b)(3); and there was no evidence in the motion or at the hearing
    which tended to support even a suspicion, much less a reasonable likelihood,
    that defendant could establish a meritorious defense of insanity.

5. **Constitutional Law § 40— capital case—failure to reappoint associate counsel**

    In this prosecution for first degree murder, armed robbery and first
    degree burglary, the trial court did not abuse its discretion in the denial of
    defendant's motion made shortly before trial to reappoint or affirm the ap-
    pointment of associate counsel where the district court on its own motion ap-
    pointed associate counsel for defendant shortly after his arrest; associate
    counsel worked closely with defendant's chief counsel until shortly before trial
    when the motion was denied; defendant's chief counsel stated at the hearing
    only that he anticipated generally that associate counsel would share with him

during the course of the trial the responsibilities of trial counsel and that "it may be running and looking up an item of law, or doing something in the way of investigation"; and no evidence was presented to the trial court which would tend to establish that defendant's case was so lengthy, factually or legally complex, or fraught with other legal difficulties such as to require the appointment of more than one attorney to ensure a fair trial and an adequate defense. G.S. 7A-459.

**6. Indictment and Warrant § 13.1— exact time of offenses—denial of motion for bill of particulars**

In this prosecution for first degree murder, armed robbery and first degree burglary, the trial court did not err in the denial of defendant's motion for a bill of particulars requesting the State to specify the exact time the offenses were allegedly committed where the warrant and indictment for burglary advised defendant from the outset that the series of offenses allegedly took place during the evening of 21 March; the State adduced no evidence at trial which tended to specify the exact time of the offenses with greater particularity; defendant's trial testimony presented an alibi as to his whereabouts throughout the evening in question and the early morning hours of the next day, but there was no corroboration as to any part of his account; the State presented no evidence at trial of which defendant was unaware; and it does not appear likely that defendant's tactics at trial would have varied in the slightest had he been privy to an estimate of the exact time the offenses allegedly occurred.

**7. Criminal Law § 75.2—admissibility of confession—no request for attorney—no pressure by police**

The trial court properly refused to suppress defendant's in-custody statement to the police where the evidence, although conflicting, supported the court's findings that defendant did not request an attorney during questioning and was not pressured by police comments about plea bargaining and the possibility of the death sentence, and the evidence supported the court's findings and conclusions that defendant's statement was made voluntarily after an understanding waiver of his right to counsel.

**8. Criminal Law § 89.5— pretrial statement by accomplice—admission for corroboration—slight variances**

An accomplice's pretrial statement did not differ so substantially from his in-court testimony that the statement was incompetent for corroborative purposes where the statement was generally and substantially consistent with the accomplice's trial testimony; for the most part, the statement was less complete than the trial testimony; the only "new" material presented by the statement was the mention of defendant asking the accomplice whether he had been cut; and this item alone added nothing of import to the State's case in chief in light of competent testimony by the accomplice that he held the deceased while defendant assaulted him with a knife.

**9. Criminal Law § 102.6— jury argument—reference to corroborative evidence as substantive evidence—harmless error**

The trial court erred in permitting the prosecutor, over defendant's objection, to allude to portions of a corroborative statement as substantive evidence

in his closing jury argument; however, such error was not prejudicial to defendant since the statement as compared to the corroborative witness's trial testimony was relatively benign.

10. **Burglary and Unlawful Breakings § 5; Homicide § 21.6; Robbery § 4.3— first degree burglary—armed robbery—first degree murder—sufficiency of evidence**

The State's evidence was sufficient for the jury on issues of defendant's guilt of first degree burglary, armed robbery and first degree murder where it tended to show that defendant and two companions went to deceased's apartment with the intention to rob; defendant and his male companion "busted the door open and went in" deceased's apartment in the nighttime; defendant and his male companion assaulted the deceased in his bedroom, the defendant using a knife; the male companion left the apartment after taking a tape recorder; and deceased died as the result of wounds inflicted in the course of the robbery with a dangerous weapon.

11. **Criminal Law § 101.2— jurors' inspection of gun not introduced into evidence—curative instructions**

Although it was technically improper for the prosecution to pass among the jurors a gun belonging to deceased which was not introduced into evidence, defendant was not prejudiced thereby where the error was quickly noticed by the trial court and the court on its own motion promptly instructed the jury not to consider the gun in any manner.

12. **Burglary and Unlawful Breakings § 5.8— sufficient evidence of "breaking"**

There was sufficient evidence of a "breaking" to support the trial court's charge on burglary where the State's evidence tended to show that defendant and a male accomplice gained access to deceased's dwelling by pushing a female accomplice out of the way as she left the dwelling, "busting" the door open, and rushing into the dwelling.

13. **Homicide § 25.1— submission of felony murder and underlying felony**

It was not error for the court to submit both a felony murder count and the underlying felony count of armed robbery to the jury since it was remotely possible that the jury could have found defendant guilty of the felony of armed robbery but not of the murder, the defendant's rights having been protected when the trial court properly arrested judgment on the charge of armed robbery after the jury returned a verdict of guilty on the felony murder charge.

14. **Criminal Law § 122.2— instruction on expense of retrying case—prohibition by statute—harmless error in this case**

Under G.S. 15A-1235, a North Carolina jury may no longer be advised of the potential expense and inconvenience of retrying the case should the jury fail to agree. However, the trial court's instruction to such effect in this case did not constitute prejudicial error where the record contains no indication that the jury was in fact deadlocked in its deliberations, or in any other way open to pressure by the trial judge to "force" a verdict, at the time the charge was given, and the charge made it clear that the trial court did not intend that any juror surrender his conscientious convictions or judgment and contained no such element of coercion as to warrant a new trial.

Justice BROCK did not participate in the consideration or decision of this case.

BEFORE *Judge Seay*, at the 16 July 1979 Session of RICH-MOND Superior Court and on bills of indictment proper in form, defendant was tried and convicted of first-degree (felony) murder, robbery with a dangerous weapon, and first-degree burglary. From judgments imposing consecutive life sentences on the murder and burglary counts (judgment arrested as to the robbery count), defendant appeals pursuant to G.S. 7A-27(a).

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General John R. B. Matthis and Associate Attorney John F. Maddrey for the State.*

*Joseph G. Davis, Jr., for defendant appellant.*

EXUM, Justice.

By this appeal defendant, an indigent, raises numerous assignments of error. The most important of these relate to the adequacy of defendant's representation provided by the State under G.S. 7A-450(b), and to the permissible bounds of the charge which may be given by the trial court to a jury which appears stalled in its deliberations. We find no prejudicial error in any aspect of defendant's trial and we affirm his conviction.

The State's evidence tended to show that the deceased, Harlee Leak, was found in his apartment bleeding from a fatal wound about 1:00 a.m. on the morning of 22 March 1979. Defendant's in-custody statement to the police, introduced at trial against him, indicated that defendant, along with his girlfriend Mary Ann Bennett and his cousin Charlie Harris, went to Leak's apartment on the evening of 22 March with the intention of robbing him, but that defendant and Bennett ran from the scene during a scuffle between Harris and Leak. Harris testified on the other hand that he and defendant tried to subdue Leak, that defendant had a knife and Harris saw him "swing" it, and that Harris left the apartment while defendant and Leak were still fighting in the bedroom. Harris further testified that upon leaving the apartment, he took a tape recorder belonging to Leak which he later pawned. A bracelet belonging to defendant was found lying on the bed in Leak's apartment.

Defendant testified in his own behalf that on the evening of 21 March he persuaded Mary Ann Bennett to borrow some money from Leak, after which he went to a party about 11:30 p.m. He stayed at the party until 1:00 a.m. He further testified that he saw Charlie Harris later that evening and that Harris told of taking a tape recorder from Leak after "mess[ing] him up." Defendant's sister testified that several days prior to the murder she had mistakenly left defendant's bracelet at Leak's apartment while visiting him.

The jury found defendant guilty of first-degree murder, first-degree burglary and armed robbery. At a separate sentencing proceeding in the first-degree murder conviction, the jury was unable to agree on a sentence recommendation. The trial judge, as required by G.S. 15A-2000(b), imposed a life sentence on the conviction.

Defendant first assigns error to the trial court's denial of his motions for a continuance and for funds to hire a private investigator to assist in the preparation of his case. He argues that his case would have undoubtedly been improved by a "better investigation" of the jury venire for voir dire purposes, and by the "extra help" an investigator would have afforded in finding witnesses to support his alibi defense. He bases his entitlement to such help upon G.S. 7A-450(b), which sets forth the responsibility of the State to provide an indigent defendant "with counsel and the *other necessary expenses of representation.*" (Emphasis supplied.)

[1, 2] The questions raised by assignments similar to this one have been thoroughly discussed by this Court in *State v. Gray,* 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572 (1976); and *State v. Tatum,* 291 N.C. 73, 229 S.E. 2d 562 (1976). The gist of these cases is that "an indigent defendant's constitutional and statutory right to a State appointed investigator arises only upon a showing that there is a *reasonable likelihood* that such an investigator *would discover* evidence which would materially assist defendant in the preparation of his defense." *State v. Alford,* 298 N.C. 465, 469, 259 S.E. 2d 242, 245 (1979). (Emphasis supplied.) Moreover, it is well established that a motion for continuance which does not implicate constitutional rights is ordinarily addressed to the discretion of the

trial court, and its denial will not be held error on appeal in the absence of an abuse of discretion. *State v. Thomas,* 294 N.C. 105, 240 S.E. 2d 426 (1978).

[3] The record reveals that defendant's counsel, Mr. Joseph Davis, was appointed on 27 March 1979. The motions for a private investigator and for a continuance were not made until 3 July. These motions speak generally of the need for defendant's counsel to interview additional witnesses and investigate thoroughly the circumstances of the alleged crimes. At the hearing on these motions, however, counsel for defendant did little more than assert that "hours of inquiry" were still required into "the possible testimony of witnesses" who had not yet been contacted some three months after defendant's arrest. We do not think such a statement rises to the level of showing a reasonable likelihood that the efforts of an investigator would discover additional evidence helpful to defendant. Absent a more specific indication of the need for the testimony of particular witnesses or the need for the investigatory development of a particular item of evidence, the motions were directed to the sound discretion of the trial court. We find no abuse of discretion in their denial. "[T]he State is not required by law to finance a fishing expedition for defendant in the vain hope that 'something' will turn up." *State v. Alford, supra,* 298 N.C. at 469, 259 S.E. 2d at 245.

[4] These same considerations apply to defendant's contention of error in the trial court's denial of his motion for funds to hire a private psychiatrist. Upon motion by the State, defendant was in fact sent to Dorothea Dix Hospital and there examined by a psychiatrist on 20 April 1979. The psychiatrist's report, made available to defendant's counsel shortly after the examination, indicated that defendant was capable of proceeding to trial and that he was legally sane, albeit somewhat intoxicated, at the time of the alleged crimes. Defendant nevertheless moved on 3 July that funds be made available to hire a private psychiatrist for a more thorough investigation of defendant's state of mind at the time of the alleged offenses. This motion was denied by the trial court after a hearing in which defendant's own appearance and testimony indicated that he was fully capable of understanding his rights and assisting in his own defense.

We find no error in the denial of defendant's motion for further psychiatric assistance. The trial court's hearing on the mo-

tion was fully adequate to determine defendant's capacity to proceed, *see* G.S. 15A-1002(b)(3); *State v. Taylor,* 298 N.C. 405, 259 S.E. 2d 502 (1979); and the court's conclusion that defendant was competent to stand trial is supported by adequate findings of fact which are in turn supported by evidence adduced at the hearing and appearing in the record. We are not persuaded by defendant's contention that further psychiatric inquiry could have revealed expert information "as to the possibility of insanity as a defense." There was simply no evidence presented in the motion or at the hearing which tended to support even a suspicion, much less a reasonable likelihood, that defendant could establish a meritorious defense of insanity. Under these circumstances, the court's refusal to require the State to pay for an additional psychiatric evaluation was not error. *See, e.g., State v. Patterson,* 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated,* 428 U.S. 904 (1976).

[5] Finally, we see no merit to defendant's argument that the trial court erred in refusing to reappoint or affirm the appointment of associate counsel. Apparently on its own motion, the district court appointed Mr. Alden Webb assistant counsel for the defendant shortly after his arrest. Mr. Webb worked closely with defendant's chief counsel, Joseph Davis, until shortly before trial, when defendant's motion to have the court verify Mr. Webb's continued involvement in the case was denied.

Sections 4.8 and 4.9 of Appendix VIII to the North Carolina General Statutes (1979 Cum. Supp.), promulgated by the State Bar Council and adopted pursuant to G.S. 7A-459, provide that "in appropriate cases in the discretion of the Court" an additional counsel may be appointed for an indigent defendant charged with a capital offense. Since such an appointment is clearly discretionary with the trial or appellate court, a failure to appoint or continue the appointment of associate counsel will be held error only when it amounts to a clear abuse of that discretion, *i.e.,* only when it is denied in the face of a showing by defendant of a reasonable likelihood that additional counsel would materially assist in the preparation of his defense, or that without such help it is probable that defendant will not receive a fair trial. *State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (1979). In the instant case, there is no doubt that the additional efforts of Mr. Webb helped considerably to reduce the workload of Mr. Davis in the prepara-

State v. Easterling

tion of defendant's case. However, no evidence was presented to the trial court which would tend to establish nor does the record reveal that defendant's case was so lengthy, factually or legally complex, or fraught with other difficulties such as to *require* the appointment of more than one attorney to ensure a fair trial and an adequate defense. At the hearing on the motion, Mr. Davis himself indicated little more than the fact that he felt Mr. Webb's involvement in the case was "appropriate." As to the material need for the continued assistance of Mr. Webb, Mr. Davis stated only that, "I anticipated generally that he would share with me during the course of the trial the responsibilities of trial counsel; it may be running and looking up an item of law, or doing something in the way of investigation. I can't be more specific than that." In the absence of some more specific showing that defendant's case would be materially prejudiced without the assistance of an extra attorney, the trial court did not err in refusing to continue the appointment of Mr. Webb as associate counsel.

[6] Defendant next assigns error to the trial court's denial of his motion for a bill of particulars requesting the State to specify the exact time the offenses were alleged to have occurred. He argues that the State's failure to pinpoint the precise time of the offenses impaired his ability to prepare an adequate alibi defense. This contention is without merit.

The grant or denial of a bill of particulars is generally within the discretion of the trial court and is not subject to review "except for palpable and gross abuse thereof." *State v. McLaughlin,* 286 N.C. 597, 603, 213 S.E. 2d 238, 242 (1975), *death sentence vacated,* 428 U.S. 903 (1976). The court *must* order the State to respond to a request for a bill of particulars only when the defendant shows that the information requested is *necessary* to enable him to prepare an adequate defense. G.S. 15A-925(c). Stated otherwise, a denial of a defendant's motion for a bill of particulars will be held error only when it clearly appears to the appellate court that the lack of timely access to the requested information significantly impaired defendant's preparation and conduct of his case. No such prejudice is evident from this record.

The warrant and indictment for the crime of burglary served to advise defendant from the outset that the series of offenses

with which he was charged allegedly took place some time during the evening of 21 March. At trial, the State adduced no evidence which tended to specify the exact time of the offenses with any greater particularity; indeed, it is not even apparent that more specific information was even available. Defendant's trial testimony presented an alibi as to his whereabouts throughout the evening in question and the early morning hours of the next day. There was, however, no corroboration as to *any* part of his account. In light of these circumstances, we are not persuaded that defendant was prejudiced or his defense in any way impaired by the failure of the State to allege the precise time of the offenses. The State presented no evidence at trial of which defendant was unaware. It does not appear likely that his defense tactics would have varied in the slightest had he been privy to an estimate of the exact time the offenses allegedly occurred. There was no error in the trial court's denial of defendant's motion for the bill of particulars.

[7] · Defendant's contention that his in-custody statement to the police should have been suppressed is equally without merit.

At the voir dire hearing conducted on the motion to suppress, the State's evidence tended to show that before defendant made the statement to the police, he had been fully informed of his constitutional rights, had twice signed express waivers of these rights, and had been allowed access to a telephone on several occasions. Defendant himself testified that he had been advised of his rights "maybe five or six times" and that he understood the import of the waiver he signed just before making the statement. The voir dire evidence is conflicting as to whether defendant requested an attorney during questioning and whether he was pressured by police comments about plea bargaining and the possibility of the death sentence. The trial court chose not to believe defendant's version on these points, and the court's findings and conclusions that defendant's statement was made voluntarily after an understanding waiver of his right to counsel are amply supported by the record. The findings are therefore conclusive on appeal. *State v. Herndon,* 292 N.C. 424, 233 S.E. 2d 557 (1977); *State v. Jackson,* 292 N.C. 203, 232 S.E. 2d 407, *cert. denied,* 434 U.S. 850 (1977). This assignment of error is overruled.

[8]   At trial, police Detective Harold Napier was allowed to read the statement made to the police by Charlie Harris, defendant's

alleged accomplice and one of the chief witnesses for the State. Harris had previously testified and his credibility had been attacked on cross-examination. His statement was offered only for the purposes of corroborating his prior testimony. The trial court gave proper limiting instructions to the jury both before and after the statement was read. Defendant nevertheless contends that Harris's pretrial statement differed so substantially from his in-court testimony that the statement was wholly incompetent for corroborative purposes. He further argues that it was prejudicial error for the trial court to allow the prosecutor to refer to the substance of the statement in the course of jury argument. We disagree with both of these contentions.

Harris's pretrial statement indicated that he had not seen what defendant had in his hand during the assault on the deceased. Harris testified before the jury, however, that defendant had used a butcher knife. The pretrial statement also mentioned that after the fatal assault, defendant had asked Harris whether defendant had accidentally cut him during the affray with the deceased; no mention of this was elicited during Harris's in-court testimony. Finally, the pretrial statement said nothing either about the tape player Harris took or the sweater defendant allegedly gave Harris to wear during the incident, whereas both these matters were brought out in Harris's trial testimony.

We do not find these variances to be so material as to render Harris's prior statement inadmissible to corroborate his account given from the stand. The statement is generally and substantially consistent with the testimony it is intended to buttress, and the fact that slight variations exist between the two goes only to the statement's corroborative weight, not its admissibility. *State v. Lester*, 294 N.C. 220, 240 S.E. 2d 391 (1978); *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963). For the most part, the statement is less complete than the trial testimony it confirms. As such it is underinclusive rather than overinclusive and introduces little in the way of "new" evidence under the guise of corroboration. *Cf. State v. Rogers*, 299 N.C. 597, 605-08, 264 S.E. 2d 89, 94-96 (1980) (Exum, J., concurring). Indeed, the only "new" material worth noting that can be said to have been evidenced by the reading of the statement was the mention of defendant asking Harris whether he had been cut. In light of the competent testimony by Harris that he held the deceased while

defendant assaulted him with a knife, this item alone added nothing of import to the State's case in chief. The embellishment which it occasioned was minimal, immaterial, and only collaterally significant. We thus find no error in the use of the statement as corroboration.

[9]   There was technical error, however, in the trial court's allowing, over defendant's timely objection, the prosecutor to argue portions of the corroborative statement to the jury. The statement having been offered only corroboratively, it was improper for the State to allude to it as substantive evidence during closing argument. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated,* 408 U.S. 939 (1972). Nevertheless, since the statement as compared with the witness's trial testimony was relatively benign, we cannot see how defendant was prejudiced by this aspect of the prosecutor's argument. This assignment of error is therefore overruled.

[10]   We find no merit to defendant's contention that the trial court erred in denying his motion to dismiss at the close of the evidence. It is elemental that in ruling upon a motion by defendant to dismiss a criminal action at the close of the State's evidence, the court must consider all the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference of fact arising from the evidence. *State v. Witherspoon,* 293 N.C. 321, 237 S.E. 2d 822 (1977). On the charge of robbery with a dangerous weapon, evidence was presented that defendant, Charlie Harris, and Mary Ann Bennett went to the deceased's apartment with the intention to rob; that defendant and Harris together assaulted the deceased in his bedroom, the defendant using a knife; and that Harris left the apartment after taking a tape recorder. As to the charge of first-degree burglary, the State's evidence tended to show that defendant and Harris "busted the door open and went in the house" of the deceased in the nighttime with the intent to commit armed robbery, and that the deceased was then present in his dwelling. Regarding the charge of felony murder, the evidence was plenary that the deceased died as the result of wounds inflicted in the course of the robbery with a dangerous weapon. The evidence was clearly sufficient to go to the jury on all charges.

[11]   Defendant next contends that he should have been granted a mistrial after State's Exhibit No. 20, a gun not introduced into evidence, was passed among the jurors. We disagree.

The gun had been identified at trial as one belonging to the deceased and found at the scene of the crime by Detective Napier. Defendant's pretrial statement to the police, read to the jury by Napier, had indicated that defendant had been aware of the fact that the deceased possessed a gun. However, the gun was never formally introduced into evidence and its relevance to the State's case was minimal. Although it was technically improper for the prosecution to allow the jurors to handle this exhibit, the error was quickly noticed by the trial court and the court on its own motion promptly instructed the jury not to consider the gun in any manner. Under these circumstances, we cannot see how the outcome of the trial was in any way affected adversely to defendant. An insubstantial technical error which could not have affected the result of the trial will not be held prejudicial on appeal. G.S. 15A-1443; *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971).

Defendant alleges several instances of error in the trial judge's charge to the jury. We find no merit to any of his arguments in this regard.

[12]   First, defendant asserts in effect that there was insufficient evidence of a "breaking" to support the trial court's charge on burglary. As noted above, however, the State's evidence indicated that defendant and Harris gained access to the deceased's dwelling by pushing Mary Ann Bennett out of the way, "busting" the door open, and rushing into the apartment. Such an act constitutes a "breaking" in the law of burglary. *State v. Nelson,* 298 N.C. 573, 260 S.E. 2d 629 (1979).

[13]   Second, defendant contends the instructions impermissibly allowed the jury to find defendant guilty of both felony murder and armed robbery. Suffice it to say that the defendant's rights were protected when the trial court properly arrested judgment on the charge of armed robbery after the jury returned a verdict of guilty on the felony murder charge. It was not error for the court to submit both the murder count and the underlying felony count to the jury since it was remotely possible that the jury could have found defendant guilty of the felony of armed rob-

bery but not of the murder. *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972).

Third, defendant assigns error to the mention in the trial judge's recapitulation of the evidence of the pretrial statement of Charlie Harris. As noted above, the statement was read to the jury for the limited purpose of corroborating Harris's narrative on the stand. An examination of the trial judge's charge on this point reveals that the jury was fully and adequately instructed to consider the statement only insofar as it bore upon the credibility of Harris's in-court testimony. This was not error.

The record reveals that the jury began its guilt phase deliberations on Friday afternoon, 20 July. Verdicts were reached shortly before noontime the next day. During its deliberations on Saturday morning, the trial judge on his own motion brought the jury back to the courtroom and instructed them as follows:

> "Members of the jury, I realize what a disagreement means, and I presume you understand and realize what a disagreement means. *It means that there will be another week or more of the time of the Court that will have to be consumed in the trial of these actions again.* I do not want to force you or coerce you in any way to reach a verdict, but it is your duty to try to reconcile your differences and to reach a verdict, if it can be done, without any surrender of anyone's conscientious convictions. You have heard the evidence in this case, and all of it; *and a mistrial will mean that another jury will have to be selected to hear the case or these cases, and the evidence again.* I recognize that there are reasons sometimes why jurors cannot agree. The Court wants to emphasize that it is your duty to do whatever you can to reason the matter over together as reasonable men, reasonable women, and to reconcile your differences, if such is possible without the surrender of your conscientious convictions, and to reach a verdict. . . ." (Emphasis supplied.)

Upon authority of the Court of Appeals' decision in *State v. Lamb,* 44 N.C. App. 251, 261 S.E. 2d 130 (1980), defendant contends that the emphasized portions of this instruction violate applicable law and require this Court to grant him a new trial.

We note that substantially the same charge as was given here was approved in *State v. Thomas,* 292 N.C. 527, 541, 234 S.E.

2d 615, 623 (1977). Furthermore, the charge as given tracks almost verbatim that approved in the Pattern Jury Instructions, N.C.P.I.—Crim. 101.40. In *State v. Alston,* 294 N.C. 577, 594, 243 S.E. 2d 354, 365 (1978), Justice (now Chief Justice) Branch pointed out that "the general rule appears to be that the trial judge may state to the jury the ills attendant upon disagreement including the resulting expense . . . and that the case will in all probability have to be tried by another jury in the event that the jury fails to agree." Thus, under the standards approved in *Alston, Thomas,* and the Pattern Jury Instructions, the charge is clearly acceptable. However, effective 1 July 1978, the Legislature enacted G.S. 15A-1235, which provides:

"*Length of deliberations; deadlocked jury.* —(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

This statute is now the proper reference for standards applicable to charges which may be given a jury that is apparently unable to agree upon a verdict. *State v. Alston, supra*, 294 N.C. 577, 243 S.E. 2d 354. The statute itself borrows from standards approved by the American Bar Association. *See* American Bar Association Standards Relating to Trial by Jury, Section 5.4 (Approved Draft 1968). The Official Commentary to G.S. 15A-1235 notes that the statute represents a choice of the "weak" charge approved in the ABA Standards, as opposed to the "strong" charge traditionally used in federal courts and the "even stronger charges authorized under North Carolina case law." Indeed, in the course of approving the draft of G.S. 15A-1235 that was submitted to the General Assembly for enactment, the Criminal Code Commission deleted a "provision previously sanctioned under North Carolina case law which would have authorized the judge to inform the jurors that if they do not agree upon a verdict another jury may be called upon to try the case." G.S. 15A-1235, *Official Commentary*.

[14]   Thus, as of 1 July 1978, charges propounded to a deadlocked jury must conform to those standards set out in the statute. In its enactment the Legislature approved a deletion from that statute which would have expressly authorized trial judges to do that which was formerly allowed — *i.e.*, instruct the jury that its inability to agree may require the additional expense of retrial. This leads us to conclude that the Legislature intended to provide that a North Carolina jury may no longer be advised of the potential expense and inconvenience of retrying the case should the jury fail to agree. It was thus error for the trial court to mention this fact to the jury.

We do not agree with defendant, however, that this error necessarily requires a new trial. Not every violation of the procedures embodied in Chapter 15A amounts to prejudicial error. Although the Court of Appeals in *State v. Lamb, supra*, 44 N.C. App. 251, 261 S.E. 2d 130, granted a new trial upon finding that the judge's charge in that case exceeded the bounds of G.S. 15A-1235, we see no reason to dispense with the usual require-

ment that an error in the judge's instructions to the jury must be to the prejudice of defendant in order to warrant corrective relief by the appellate division. G.S. 15A-1442(4)(d). Such prejudice will normally be deemed to be present, in cases relating to rights arising other than under the Federal Constitution, *only* "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." G.S. 15A-1443(a). Furthermore, the burden of showing that such a possibility exists rests upon the defendant. *Id.*

Considering as we must the circumstances under which the erroneous instruction was given and its probable impact upon the jury, *see State v. Cousin,* 292 N.C. 461, 233 S.E. 2d 554 (1977), we do not think defendant in the instant case has met his burden of showing prejudice. The record provides not the slightest indication that the jury was in fact deadlocked in its deliberations, or in any other way open to pressure by the trial judge to "force" a verdict, at the time the charge was given. Furthermore, the charge itself makes clear that the trial court did not intend that any juror surrender his conscientious conviction or judgment and contains no such element of coercion as to warrant a new trial. *State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975). Thus, although the charge itself was in part impermissible under G.S. 15A-1235, we do not believe its use prejudiced defendant in the case before us.

We caution the trial bench, however, that our holding today is not to be taken as disapproval of the contrary result reached in *State v. Lamb, supra,* a case in which initial jury disagreement preceded the offending instruction. Clear violations of the procedural safeguards contained in G.S. 15A-1235 cannot be lightly tolerated by the appellate division. Indeed, it should be the rule rather than the exception that a disregard of the guidelines established in that statute will require a finding on appeal of prejudicial error.

Defendant's remaining assignments of error deserve no discussion. We have carefully considered each of them and find them totally without merit. In defendant's trial we find

No error.

Justice BROCK did not participate in the consideration or decision of this case.