STATE OF NORTH CAROLINA v. JAMES WALTER PEEK

No. 117A84

(Filed 2 April 1985)

1. **Criminal Law § 122.2— additional instructions on failure to reach verdict—no error**

The trial judge did not err in his instructions to the jury when the foreman told him the jury was having trouble reaching a verdict where the jury had been deliberating less than two hours when it reentered the courtroom; the jury foreman and other members of the panel appeared to believe that the jury was not hopelessly deadlocked; and the instructions, although not following precisely the guidelines set forth in G.S. 15A-1235, in essence merely asked the jury to continue to deliberate and in no way contained any element of coercion that would warrant a new trial.

2. **Criminal Law § 117— character evidence incompetent—no error in instructions**

The trial court did not err in its instructions on character evidence where the testimony given by defendant's witnesses was not competent character evidence because it was given in the form of personal opinion. Moreover, defendant did not request an instruction on character evidence and did not object to the instruction given despite invitations by the trial judge for corrections or additions to his instructions.

3. **Rape and Allied Offenses § 7; Constitutional Law § 80— first-degree rape—mandatory life sentence—not cruel and unusual punishment**

A mandatory life sentence for first-degree rape did not constitute cruel and unusual punishment under the U.S. or North Carolina Constitutions in view of the seriousness of the crime and the substantial deference granted to the broad authority that legislators necessarily possess in determining the types and limits of punishments for crimes. G.S. 14-1.1(a)(2); G.S. 14-27.2; Eighth Amendment to the Constitution of the United States; Art. I, § 27 of the North Carolina Constitution.

APPEAL by defendant from *Downs, J.*, at the 16 January 1984 Criminal Session of Superior Court, MECKLENBURG County. Defendant was convicted of first-degree rape and sentenced to life imprisonment. He appeals as a matter of right pursuant to N.C. G.S. § 7A-27(a) (1981).

The State's evidence at trial tended to show that the prosecuting witness, Mary Black, spent the evening of 23 April 1983 with her boyfriend in her apartment. She had sexual intercourse with her boyfriend in the apartment prior to 10:00 p.m. when he left for work. As a result of taking pain medication, Ms. Black fell asleep on a sofa in her apartment soon after her boyfriend left.

She was awakened by a knock on her front door. She went to answer the door and recognized defendant James Walter Peek standing outside. Ms. Black had known defendant since 1981 when he worked on an interior construction project in the office where she was employed. She and defendant had gone to lunch together a number of times and defendant had visited Ms. Black in her apartment on several occasions. On one such occasion defendant had made sexual advances toward her. Ms. Black testified that she protested and struggled with him, but that she finally submitted, and had sexual intercourse with him.

On the night of 23 April 1983 after Ms. Black admitted defendant to her apartment, he returned to his car to turn off the car's motor and to retrieve his gun, telling Ms. Black he did not want his gun to be stolen. Defendant reentered the apartment, closed and locked Ms. Black's front door and sat down with her on the sofa. Defendant's gun was in his pocket at that time, but Ms. Black testified that she was not initially frightened by it. Defendant began making sexual advances toward Ms. Black, and she asked him to leave. Assuring her that he would not hurt her, defendant removed a bullet from his gun and gave it to her. Ms. Black and defendant began to struggle on the sofa, and she scratched defendant. When defendant looked in a mirror above the sofa to see the scratch, he told Ms. Black the scratch burned and that he was going to hurt her. At that time defendant had the gun in his hand, and Ms. Black testified that she was afraid of it. Ms. Black threatened to call the police, but defendant told her he would have done what he wanted to do by the time the police arrived. After another struggle Ms. Black submitted against her will to vaginal intercourse with defendant. Defendant also attempted to have anal intercourse with her. Ms. Black testified that during the sexual acts, she thought the gun was on the sofa beside her head.

Ms. Black called the police after defendant left her apartment. She was taken to a hospital where a rape kit was prepared. The results of the rape kit revealed that semen was present in both vaginal and rectal smears taken from Ms. Black. Both Ms. Black and her boyfriend denied having engaged in anal intercourse on the evening of 23 April.

Defendant's evidence tended to show that he and Ms. Black engaged in consensual sexual intercourse on the night in question.

State v. Peek

Defendant testified that Ms. Black neither scratched him nor threatened to call the police. He stated that although he had a gun on his person when he first went to Ms. Black's door, he returned the gun to his car when he turned off the car's motor. Defendant also testified that he and Ms. Black had been lovers for a time and that he had proposed to marry her. He testified that while he worked in the building where Ms. Black was employed, they had lunch together nearly every day and that he had introduced her to his co-workers as his "lady."

One of defendant's former co-workers testified that he had frequently seen defendant and Ms. Black go to lunch together and that he had observed them holding hands. Another co-worker testified that Ms. Black and defendant appeared to be "going with each other," and that defendant had mentioned spending the night with Ms. Black. Several witnesses stated their opinions about defendant's character.

The jury found defendant guilty of first-degree rape. Although the trial judge eventually sentenced defendant to the mandatory sentence of life imprisonment, he postponed sentencing defendant for one month to investigate alternatives to sentencing. He also conducted a sentencing hearing during which he found five factors in mitigation and none in aggravation cognizable under the Fair Sentencing Act. N.C. Gen. Stat. § 15A-1340.1-1340.7 (1983).

*Lacy H. Thornburg, Attorney General, by Roy A. Giles, Jr., Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender and Louis D. Bilionis, Special Assistant to the Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

[1]  By his first assignment of error, defendant contends the trial judge prejudicially erred in his instructions to the jury when the jury foreman told him the jury was having trouble reaching a unanimous verdict. We do not agree.

The jury began its deliberations at 11:55 a.m. and continued until 12:35 p.m. when the court recessed for lunch. After having

resumed deliberations at 2:00 p.m., the jury returned to the court-room at 3:13 p.m. at which time the following transpired:

THE COURT: Ms. Morton, you're carrying the verdict sheet, I take it from that you're the foreperson.

MS. MORTON: Right.

THE COURT: Does the jury want to make some inquiry of the Court?

MS. MORTON: Well, we just feel like now we can not make a unanimous decision.

THE COURT: Are you saying you're deadlocked?

MS. MORTON: I don't think so. Do ya'll?

JURORS: No; we're not.

MS. MORTON: No; we're not.

THE COURT: Well then, if you're not hopelessly dead-locked—

MS. MORTON: Some feel like we might be.

THE COURT: I want you then, of course—the Court is go-ing to let you continue deliberating. You've heard all the evidence that's going to be presented in this case. And, I want you to try to resolve it, if you can. And, I'm going to let you stay around for a while. I may make some inquiry of you further on. You won't need to announce it; we'll make some inquiry.

If you feel like you're deadlocked, that's not—that's not something that's the end of the world if you're not hopelessly deadlocked; that's the key.

So, if you would, go back and continue your delibera-tions. We'll make inquiry of you unless we've heard from you. All right.

EXCEPTION NO. 6

MS. MORTON: Thank you.

Defendant contends that the trial court erred in failing to instruct the jury in accordance with N.C.G.S. § 15A-1235, which provides in pertinent part:

§ 15A-1235. Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) *If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.*

N.C. Gen. Stat. § 15A-1235 (1983). (Emphasis added.)

It is defendant's contention that the trial judge's failure to instruct the jury in accordance with N.C.G.S. § 15A-1235 entitles him to a new trial because the instruction the trial judge gave had the effect of forcing the jury to reach a verdict. Citing *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980), defendant

would have us adopt a rule requiring verbatim instructions from the statute in every instance of potential jury deadlock.

In *Easterling*, we interpreted N.C.G.S. § 15A-1235 as "the proper reference for standards applicable to charges which may be given a jury that is apparently unable to reach a verdict." *Id.* at 608, 268 S.E. 2d at 809. In that case we held that in view of the legislative intent in establishing the guidelines in N.C.G.S. § 15A-1235, it was error for a trial court in its jury instructions to mention the time and expense required to retry a case after a jury deadlock. We recognized, however, that every variance from the procedures set forth in the statute does not require the granting of a new trial. We held that the erroneous instruction in *Easterling* was not prejudicial since the jury did not appear to be deadlocked and the charge was not unduly coercive. *Id.*

Nonetheless, this Court issued the following warning to the trial bench:

> Clear violations of the procedural safeguards contained in G.S. § 15A-1235 cannot be lightly tolerated by the appellate division. Indeed, it should be the rule rather than the exception that a disregard of the guidelines established in the statute will require a finding on appeal of prejudicial error.

*Id.* at 609, 268 S.E. 2d at 809-10.

We find no such clear violation of the procedural safeguards of N.C.G.S. § 15A-1235 in this case. We note that the language of the statute is permissive rather than mandatory—a judge "may" give or repeat the instructions in N.C.G.S. § 15A-1235(a) and (b) if it appears to the judge that a jury is unable to agree. N.C. Gen. Stat. § 15A-1235(c) (1983). *See Felton v. Felton*, 213 N.C. 194, 195 S.E. 533 (1938) (the word "may" will ordinarily be construed as permissive and not mandatory). Furthermore, it has long been the rule in this State that in deciding whether a court's instructions force a verdict or merely serve as a catalyst for further deliberations, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury. *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978).

In the case before us the jury had been deliberating less than two hours when it reentered the courtroom. The jury foreman

and other members of the panel appeared to believe that the jury was not hopelessly deadlocked. *See Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980) (no prejudicial error where jury not deadlocked). Furthermore, although the instructions do not precisely follow the guidelines set forth in N.C.G.S. § 15A-1235, the essence of the instructions was merely to ask the jury to continue to deliberate. The instructions in no way contained any element of coercion that would warrant a new trial in this matter. Indeed we note that the effect of the instructions was not so coercive as to impel defendant's trial counsel to object to the instructions. We hold that the trial judge did not prejudicially err in his instructions, and this assignment of error is overruled.

[2] Defendant next assigns as error the trial court's instruction to the jury relating to his character. He contends that the trial judge's instruction was erroneous because it did not inform the jury that the character evidence could be considered both as substantive evidence and as evidence relating to defendant's credibility. Although defendant requested no instruction on the character evidence, the trial judge instructed as follows:

> Evidence in this case was received in regard to the defendant's reputation and character that is. [sic] That he served honorably in the United States Marine Corps; that he fought for his country; that he is employed; in the area that he works and lives, that he has a good reputation.

> Although good character and good reputation is not an excuse for a crime, the law recognizes that a person of good character may be less likely to commit a crime than one who lacks that character.

> Therefore, if you believe from the evidence that the defendant has a good character, you may consider this fact in your determination of his guilt or his innocence. Give it such weight as he [sic] decide it should receive in connection with all other evidence.

> EXCEPTION NO. 5

Defendant argues that the prosecuting witness's credibility as compared with defendant's was the crucial issue in the case, and the judge's failure to inform the jury that it could consider

defendant's evidence of good character for purposes of determining credibility entitled defendant to a new trial. We disagree.

It is true that when a defendant offers evidence of his good character and testifies in his own behalf, he is entitled to have the jury consider it as bearing on his credibility as a witness and as substantive evidence bearing directly on the issue of his guilt or innocence. *State v. Wortham*, 240 N.C. 132, 81 S.E. 2d 254 (1954). When a defendant who has testified in his own behalf offers evidence as to his good general reputation, and the court undertakes to instruct the jury as to the legal significance of such character evidence and how it should be considered by the jury, incomplete instructions have been found to be sufficient grounds for a new trial. *State v. Burell*, 252 N.C. 115, 113 S.E. 2d 16 (1960).

In this case, however, evidence pertaining to defendant's character did not rise to the level of competent character evidence. At the time of this trial, the rule in North Carolina was that a defendant's character could be proved by testimony concerning "his *general* reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion."[1] *State v. McEachern*, 283 N.C. 57, 67, 194 S.E. 2d 787, 793-94 (1973).

It was well settled that such character evidence could not be a witness's personal opinion. *State v. Williams*, 299 N.C. 652, 263 S.E. 2d 774 (1980); *State v. Denny*, 294 N.C. 294, 240 S.E. 2d 437 (1978). In *Williams* the witness stated that he "had not never seen anything that would indicate but what [the defendant] is a pretty good fellow." *Williams*, at 661, 263 S.E. 2d at 780. This Court held that the testimony was not competent character evidence because it did not contemplate the defendant's *general* reputation among a

---

1. Effective 1 July 1984, Rule 405 of the North Carolina Evidence Code provides:

(a) Reputation or opinion.—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. Expert testimony on character is not admissible as circumstantial evidence of behavior.

(b) Specific instances of conduct.—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

group of people, but gave only the witness's personal opinion of character. *Id.*

We find the same lack of competent character evidence in the case at hand. Three of defendant's witnesses testified about his character. Andrell Watts said that he was familiar with defendant's reputation at work, but his testimony as to defendant's general character consisted of the following statement: "At work he's a very happy person. He never seems to get in arguments or anything else, settles it without getting in a big dispute about it; easy going type person."

Roosevelt Mayers testified that he was familiar with defendant's reputation in the community, but like Mr. Watts, Mr. Mayers never stated what that reputation was. Instead he said that defendant was "cool and really calm and got a mild manner about him. And, I've never known him to be in any trouble since I've been knowing him."

The Reverend Clinton Luster testified as follows:

Q. You're familiar with his character and reputation?

THE COURT: You need to give a specific answer to that.

A. Yes.

Q. What is his character and reputation in the community?

A. I would say he's an outstanding person in the community.

Q. What is his character and reputation for telling the truth, sir?

A. As long as I've known him, I've never known him to lie to me about anything.

MR. JAMES: OBJECTION, Your Honor. That's not reputation, that's opinion.

THE COURT: OVERRULED.

We find that the testimony given by defendant's witnesses is not competent character evidence because it was given in the form of personal opinion. The Reverend Luster's testimony comes

closest to being reputation evidence, but it is clear that his impression of defendant as an outstanding person in the community and as a person who does not lie is based on Luster's personal opinion, rather than defendant's *general* reputation in the community.

We note that absent a request, a trial court is not required to instruct upon character evidence even where such evidence is competent because character evidence is a subordinate feature of a case. *State v. Burell*, 252 N.C. 115, 113 S.E. 2d 16 (1960). Here, defendant made no such request and presented no competent character evidence. Therefore, had the trial court erred in its instruction, the error was in defendant's favor. We note further that defendant's attorney failed to object to the instruction despite invitations by the trial judge for any corrections or additions to his instructions. This assignment of error is overruled.

[3] Defendant next contends that the imposition of a mandatory life sentence for first-degree rape is constitutionally disproportionate and is cruel and unusual punishment as prohibited by the eighth amendment to the Constitution of the United States and Article 1, Section 27 of the North Carolina Constitution. First-degree rape is a Class B felony punishable by a mandatory sentence of life imprisonment. *See* N.C. Gen. Stat. §§ 14-27.2 and 14-1.1(a)(2). Defendant contends that the mandatory sentence imposed upon him is disproportionate when measured against sentences imposed for the same crime in other jurisdictions, against sentences imposed for other crimes in this jurisdiction, and against the gravity of the offense in this case.

In *State v. Ysaguire*, 309 N.C. 780, 309 S.E. 2d 436 (1983), the defendant similarly requested a proportionality analysis of consecutive life sentences. In *Ysaguire* we acknowledged that under the eighth amendment, "a criminal sentence must be proportionate to the crime for which defendant has been convicted." *Id.* at 786, 309 S.E. 2d at 440 (quoting *Solem v. Helm*, 463 U.S. 277, ---, 103 S.Ct. 3001, 3009 (1983) ). We nonetheless upheld the constitutionality of the imposition of consecutive life sentences in *Ysaguire* and recognized that in view of the substantial deference accorded legislatures and sentencing courts, a reviewing court "rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."

*Solem v. Helm,* 463 U.S. at ---, 103 S.Ct. at 3009 n. 16; *State v. Ysaguire,* 309 N.C. at 786, 309 S.E. 2d at 441. Indeed, "[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment." *Ysaguire,* at 786, 309 S.E. 2d at 441.

We do not find the mandatory life sentence prescribed for defendant's conviction of first-degree rape to be unconstitutionally excessive. Defendant relies in large part on *Helm* in which the United States Supreme Court overturned as excessive a sentence imposed upon a defendant under South Dakota's recidivist statute. As contrasted with this case, the defendant in *Helm* received a sentence of life imprisonment without parole after pleading guilty to uttering a "no account" check for $100, for which the maximum punishment was ordinarily five years imprisonment. The Supreme Court, in overturning Helm's sentence, noted that that defendant's crime had been referred to as "one of the most passive felonies a person could commit." *Solem v. Helm,* 463 U.S. at 653, 103 S.Ct. at 3012.

On the other hand, we are mindful that the crime of rape of which defendant was convicted has been described as the "ultimate violation of self" short of homicide. *Coker v. Georgia,* 433 U.S. 584, 597 (1977). Our legislature has seen fit to classify this serious crime into two degrees, establishing as a possible element of the first-degree offense the employment or display of a deadly weapon. Defendant in this case was convicted of rape accompanied with the display of a deadly weapon. While other jurisdictions may penalize this crime with a less severe sentence, our General Assembly has chosen to punish this serious, often life-threatening offense as a Class B felony, with a mandatory life sentence. In view of the seriousness of the crime and our obligation to "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," we do not find defendant's sentence to be unconstitutionally excessive or so gross and disproportionate as to violate the constitutions of the United States or North Carolina. *Solem v. Helm,* 463 U.S. at 290, 103 S.Ct. at 3009. This assignment of error is overruled.

Defendant received a fair trial free from prejudicial error.

No error.